UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SECURITIES AND EXCHANGE
COMMISSION
100 F Street, N.E.
Washington, D.C. 20549-4030
(202) 551-4492,

        Plaintiff,

v.

MADHAVAN SIVATHANU PILLAI
184 St Bed, fourth block
4th Main
Kormangala, Bangalore
India,

        Defendant.

Civil Action No._____

---

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### SUMMARY

1. In the third and fourth quarters of 2003, Defendant Madhavan Pillai ("Pillai"), in his capacity as the founder and head of Infotech Network Group ("Infotech"), a company based in India, entered into a series of transactions with Quovadx, Inc. ("Quovadx"), a Colorado-based software company, involving approximately $11.1 million of software licenses. Each of these transactions had material contingencies and the collection of payment was not probable, which precluded Quovadx from recognizing revenue from them. As a result, Quovadx fraudulently recognized approximately $11.1 million in software licensing revenue from the transactions with Infotech. Pillai was aware of the material contingencies involved with these transactions and

1

that Infotech was not likely to pay for the software licenses involved. Further, Pillai had Infotech enter into some of these transactions to accommodate Quovadx in meeting its revenue goals. By his conduct, Pillai aided and abetted Quovadx's violations of the antifraud and reporting provisions of the federal securities laws.

2. The Commission seeks an order permanently enjoining Pillai from further securities laws violations and imposing a civil monetary penalty.

## JURISDICTON

3. This Court has jurisdiction pursuant to Sections 21 and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u and 78aa].

4. Pillai, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business described in this Complaint, certain of which have occurred within this judicial district.

## THE DEFENDANT

5. Madhavan S. Pillai, age 39, is Chairman and Management Director (CEO) of Infotech India and a director of Infotech USA (which together comprise Infotech). Infotech, a private company, was established in 2003 to market and facilitate Indian information technology outsourcing services for U.S. software companies. During the time relevant to this complaint, Infotech employed approximately thirty employees, primarily in India.

## RELATED ENTITY

6. Quovadx, a Delaware corporation based in Englewood, Colorado, is a software company that licenses software and sells related services to the health care industry. Quovadx's

stock was registered with the Commission under Section 12(g) of the Exchange Act and traded on the NASDAQ National Market. During 2002 and 2003, Quovadx derived about one-third of its reported revenue from software licensing fees with the rest coming from software maintenance and service contracts. Quovadx separately reported its software licensing revenue, which included sales of both software and licenses.

## RELEVANT ACCOUNTING STANDARDS

7. Public companies such as Quovadx are required to file quarterly and annual reports with the Commission that presented their financial results in conformity with Generally Accepted Accounting Principles ("GAAP"). The American Institute of Certified Public Accountants' Statement of Position 97-2, *Software Revenue Recognition* ("SOP 97-2"), and related interpretations are the principal GAAP provisions governing the recognition of revenue for sales of software and software licenses.

8. Under SOP 97-2, a company may not recognize revenue from a software license sale unless and until there is: persuasive evidence of an arrangement; delivery of the software; a fixed or determinable seller's fee; and a reasonable probability of collecting the accounts receivable. Further, if payment is substantially contingent on the buyer's success in distributing the product to the customer, either due to the terms of the deal or because the buyer is so undercapitalized that it cannot pay until it sells the product, the seller may not recognize the software license revenue at the time of sale. In its financial reports filed with the Commission, Quovadx claimed that it had recognized revenue in accordance with GAAP.

## FACTUAL ALLEGATIONS

9. In early September 2003, Infotech, with Pillai acting as its principal and negotiator, executed two related agreements with Quovadx. Under the first ("the distributor

3

agreement"), Infotech agreed to buy $5 million of software licenses from Quovadx and to be the exclusive distributor of Quovadx products in India. Under the second agreement ("the outsourcing agreement"), Quovadx agreed to pay Infotech to perform certain services and conduct various research and development projects, pursuant to Statements of Work that would be subsequently negotiated. The agreements required both parties to fund letters-of-credit to guarantee the payment of their respective obligations. The distributor agreement required that Infotech fund a $5.46 million letter-of-credit before Quovadx shipped any software to it.

10.     As required by the outsourcing agreement, Quovadx immediately funded a letter-of-credit for $2.46 million to pay Infotech as it rendered outsourcing services. By mid-September, Infotech had not funded its letter-of-credit. Quovadx nevertheless shipped the $5 million of software licenses to Infotech. In an attempt to meet Quovadx's quarterly revenue goals, Quovadx solicited Pillai to have Infotech buy more software licenses before the end of the third quarter. Pillai agreed to do so on the condition that Quovadx guarantee pre-payment of outsourcing funds. On September 30, 2003, the parties signed supplemental contracts under which Infotech was to buy $2.1 million of additional software licenses and Quovadx was to pre-pay Infotech over $1 million for unspecified outsourcing work. Quovadx shipped the additional $2.1 million in software to Infotech on the last day of the quarter. Quovadx, with the concurrence of its outside auditor, offset the revenue from these two purported sales by its estimated outsourcing obligation to Infotech and recognized approximately $4.6 million in revenue for the quarter. Quovadx planned to recognize the remaining revenue as Infotech performed outsourcing services.

11.     In early October 2003, before Quovadx filed its quarterly report for the third quarter, Pillai told Quovadx that Infotech did not have enough money to fund its required letters-

4

of-credit. Quovadx agreed to wire $410,000 to assist Infotech in making a margin payment to an Indian bank, purportedly to establish and fund the required letters-of- credit. In return, Pillai gave Quovadx a letter from the Indian bank expressing confidence that Infotech's letter of credit would be opened (not funded) by October 21, 2003. Infotech sent Quovadx another non-committal letter on October 21, 2003. Quovadx relied on these letters as support for Infotech's supposed ability to pay and recognized revenue on the third quarter Infotech transactions.

12. On October 22, 2003, Quovadx issued both a press release announcing the distribution and software development agreement with Infotech and a preliminary earnings release touting a 183% increase in software licensing revenue over the third quarter of 2002. The Infotech transaction accounted for approximately 60% of Quovadx's reported third quarter software licensing revenue. Quovadx's share price increased over 25% on the news of the third quarter results.

13. By mid-December 2003, Infotech still had not funded the required letters-of-credit and had not paid for either of its third quarter purchases. Pillai told Quovadx that the software had still not been released from customs in India, which he claimed was necessary before Infotech could fund its letter-of-credit. Despite these significant issues, Quovadx, hoping to meet Wall Street expectations, asked Pillai to have Infotech make another software purchase. Pillai agreed to accommodate Quovadx's revenue recognition objectives by having Infotech purchase more software but only on the condition that Quovadx immediately wire $500,000 to Infotech as an outsourcing prepayment. Quovadx made this payment. Quovadx also sent Pillai a default letter for Infotech's failure to pay for its third quarter purchases. Thus, by mid-December Quovadx had sent $910,000 to Infotech, yet Infotech had not paid for any of the software licenses that it had bought from Quovadx.

5

14. On December 31, 2003, Infotech signed a contract to buy $6.5 million of software licenses from Quovadx. Quovadx simultaneously signed a supplemental agreement to pay Infotech up to $1.94 million for any outsourcing work that Infotech actually performed through August 2004. Pillai negotiated and signed both contracts on behalf of Infotech. Quovadx also provided Pillai assurances that it would increase Quovadx's outsourcing to Infotech significantly over the coming year.

15. On February 11, 2004, Quovadx issued its preliminary fourth quarter earnings release (attached to a Form 8-K filed the same day), which included the $6.5 million in Infotech revenue. Quovadx issued this release even though Infotech had not paid for the third quarter purchases and Infotech's ability to pay for the fourth quarter purchases depended on its ability to resell the software licenses. The earnings release claimed that Quovadx's total annual revenue for 2003 had increased about 30% and that its year-over-year software licensing revenue had grown about 173%. The Infotech transactions accounted for virtually the entire increase in Quovadx's software licensing revenue. After this announcement, Quovadx's stock price increased by about 10%, closing at $6.66 per share on February 12.

16. At the time of Quovadx's year-end audit in mid-February 2004, Infotech still had not funded a letter-of-credit or made any payments for either the third or fourth quarter software purchases. In early March 2004, Quovadx's auditor advised it that the company would have to reverse the Infotech revenue from both the third and fourth quarters unless Infotech made a substantial payment before Quovadx's annual report was due to be filed. On March 8, 2004, therefore, Quovadx, following negotiations with Pillai, authorized Infotech to draw down the $1.94 million balance on Quovadx's outsourcing letter-of-credit with the understanding that Pillai would have Quovadx use these funds to arrange bank financing to pay Quovadx for the

software purchases. After receiving the $1.94 million, Pillai told Quovadx that he believed Infotech was entitled to this money under the outsourcing agreement and would not use it to pay Quovadx for the software. When Quovadx asked Pillai to have Infotech return the money, he refused. Infotech never returned the money or paid for the software.

17.     On March 15, 2004, Quovadx announced that it would reverse all revenue on sales to Infotech in the third and fourth quarters of 2003. On March 18, Quovadx filed its annual report for 2003 which restated its financial results for the third and fourth quarters of 2003 and removed $11.1 million in revenue from transactions with Infotech.

### FIRST CLAIM FOR RELIEF
**Aiding and Abetting Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

18.     The Commission realleges and incorporates herein by reference paragraphs 1 through 17 above.

19.     Section 10(b) of the Exchange Act and Rule 10b-5 thereunder prohibit materially false or misleading statements or omissions made in connection with the purchase or sale of securities. A person or entity violates these provisions by knowingly or recklessly making material misstatements or omitting to state material information in Commission filings or in other statements disseminated to investors.

20.     Quovadx fraudulently recognized approximately $11.1 million of revenue on the Infotech transactions. As a result, Quovadx violated Section 10(b) and Rule 10b-5 thereunder. Pillai was aware of the material contingencies involved in those transactions and that Infotech was not likely to pay for the software licenses involved. Further, Pillai had Infotech enter into some of these transactions to accommodate Quovadx's revenue recognition objectives. Pillai therefore

knowingly provided substantial assistance to Quovadx in its fraud in the third and fourth quarters of 2003.

21. By reason of the foregoing, Pillai aided and abetted Quovadx's violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

**SECOND CLAIM FOR RELIEF**
**Aiding and Abetting Violations of Section 13(a) of the Exchange Act**
**[15 U.S.C. §78m(a)] and Rules 12b-20, 13a-11 and 13a-13**
**[17 C.F.R. §§240.12b-20, 240.13a-11 and 240.13a-13]**

22. The Commission realleges and incorporates herein by reference paragraphs 1 through 17 above.

23. Section 13(a) of the Exchange Act and Rules 13a-11 and 13a-13 thereunder require that issuers with securities registered under Section 12 of the Exchange Act, such as Quovadx, file periodic reports with the Commission that are complete and accurate in all material respects. Exchange Act Rule 12b-20 requires that, in addition to the information expressly required to be included in a statement or report, an issuer must add such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made, not misleading.

24. Quovadx materially overstated its software licensing revenue in the third quarter and fourth quarters of 2003 by fraudulently recognizing revenue from the purported sales of software licenses to Infotech. As a result, Quovadx's quarterly report for the third quarter of 2003 and the earnings release attached to its Form 8-K for both the third and fourth quarters, contained materially inaccurate and misleading statements. As a result, Quovadx violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-11 and 13a-13.

25. By entering into the series of software licensing transactions with Quovadx in the third and fourth quarters of 2003 while aware of the material contingencies involved in those

transactions and knowing collection was not reasonably probable, Pillai knowingly provided substantial assistance to Quovadx in its reporting violations. By reason of the foregoing, Pillai aided and abetted Quovadx's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-11 and 13a-13 thereunder.

## PRAYER FOR RELIEF

The Commission respectfully requests that this Court enter a final judgment against Defendant Pillai:

A. finding that Defendant Pillai committed the violations alleged above;

B. permanently enjoining Defendant Pillai from violating or aiding and abetting violations of Sections 10(b) and 13(a) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rules 10b-5, 12b-20, 13a-11 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 13a-1, 13a-11 and 13a-13];

C. ordering Defendant Pillai to disgorgement all ill-gotten gains and prejudgment interest thereon;

D. ordering Defendant Pillai to pay an appropriate civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §§ 78(u)(d)(3)];

E. retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

F. granting such other and additional relief as this Court deems just and proper.

Dated: July 17, 2007

_Richard E. Simpson_
Richard E. Simpson
Thomas W. Peirce

Attorneys for Plaintiff
Securities and Exchange Commission
100 F. Street N.E.
Washington, DC  20549
(202) 551-4492 (Simpson)

9

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

U.S. Securities and Exchange Commission
100 F Street, NE, Washington, DC 20549    //oo/

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Madhavan Sivathanu Pillai, 184 ST Bed, fourth block, 4th Main, Kormangala
Bangalore, India
Phone: 011-91-98453-464-42  Email: Madhavan@aiaventures.com

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)  **Resident of India**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

U.S. Securities and Exchange Commission
Richard E. Simpson, Trial Counsel
100 F Street, NE
Washington, DC 20549
(202) 551-4492

## ATTORNEYS (IF KNOWN)

Case: 1:07-cv-01273
Assigned To : Collyer, Rosemary M.
Assign. Date : 7/18/2007
Description: General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ◉ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ◉ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. *Antitrust*
☐ 410 Antitrust

### ○ B. *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ⊗ E. *General Civil (Other)*    OR    ○ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
15 U.S.C. § 77a et seq and 15 § U.S.C. 78a et seq.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE July 18, 2007   SIGNATURE OF ATTORNEY OF RECORD _Richard E. _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.